SIMEON WOOTEN v. JOHN D. WALTERS et al.

*Contract, when Divisible— Courts—Sale.*

Plaintiff and defendant entered into a parol agreement by which the former engaged to transfer to the latter a stock of merchandise and certain real property in exchange for the latter's interest, or shares, in a corporation. Possession was mutually delivered, but shortly thereafter the plaintiff notified defendant that he repudiated the contract, and brought suit to have it cancelled and for repossession of the property so transferred by him: *Held*—

1. The contract was divisible; and while the plaintiff was entitled to recover the possession of the real property—the contract for the sale thereof being void under the statute of frauds—the title to the merchandise passed to defendant, who was entitled to recover the difference in the value thereof and the shares in the corporation which he had delivered to plaintiff.

2. The defendants were properly adjudged to pay the costs of the action.

CIVIL ACTION, tried at November Term, 1891, of LENOIR Superior Court, *Boykin, J.*, presiding.

PLAINTIFF'S APPEAL.

The plaintiff brought this action to avoid the contract and recover the real and personal property hereinafter specified. The case was, by consent of the parties, referred.

The material facts found by the referee are as follows :

1. That in the year 1889 the plaintiff and defendants formed themselves into a company and were incorporated under the name of the Kinston Oil Mill Company, for the purpose of manufacturing cotton-seed oil.

3. That no certificates or other evidence of stock were ever issued by said company.

4. In November of said year, 1889, the plaintiff agreed with the defendant J. D. Walters to sell to him his stock of

merchandise and two stores and lots, all being in LaGrange, and was to take in payment therefor the interests of the said J. D. Walters and the defendant Alex. Sutton in the said oil mill, the difference to be paid as it should appear on esti- mation.

5. The contract above mentioned was entered into under the following circumstances: Walters was at the store of Wooten, and a proposition to trade was made, by which party is uncertain, and whether the stores were then named or not is uncertain. They agreed to meet again that night. At night Walters went to Wooten's store, and after a while they agreed that the goods were worth twenty per cent. less than their original cost. They then immediately began to talk about the price of the stores, but did not agree as to their price; they then began to talk about the price of the oil mill property; Walters said it was worth dollar for dollar for what had been put into the mill; Wooten thought he ought to make some reduction; Walters refused to do so. Then they began to talk again about the stores, but did not agree as to the price. At this point Walters said to Wooten, "Do we understand each other?" Wooten said he thought so. Wal- ters said, "You are to take the oil mill property at what it cost us, and I am to take the goods at twenty per cent. off first cost." Wooten made no reply, but walked off to attend to some matter, came back, and they walked out of the store. Walters again named about the stores; Wooten asked $3,000; Walters offered $2,500; before they separated, they agreed on the price of the stores at $2,750, and Wooten then asked Walters when he wanted to take an inventory of the goods.

6. The contract was not reduced to writing, nor any note or memorandum thereof.

8. After the inventory was completed, Wooten delivered the stores and goods into the possession of Walters.

9. Wooten took possession of the oil mill property, com- pleted the erection of machinery, etc., and operated the mill

about two weeks and then stopped running the mill, and about a week after informed Walters he should not carry out and complete the contract, and offered to return to him the mill property, and demanded of Walters the return of the stores and goods.

10. Walters has always been willing and able to perform his part of the contract, and several times so informed Wooten.

Conclusions of law from the foregoing facts—

1. That the contract for the sale of the stores and the goods is an entire contract, and cannot be divided or apportioned.

2. That the plaintiff Wooten is entitled to recover the possession of the two stores and lots mentioned in the pleadings.

3. That the plaintiff Wooten is not entitled to recover the goods, or the value of them, from the defendants.

4. That the defendants are not entitled to have the contract enforced as to the stores and lots.

5. That the defendants are entitled to recover of the plaintiff $971.32, it being the amount paid plaintiff over the value of goods received from plaintiff.

The Court sustained the defendants' exception to the first conclusion of law and "adjudged that the said contract is divisible."

The plaintiff filed exceptions as follows:

"1. Plaintiff excepts to conclusion of law No. 3, that the plaintiff is not entitled to recover the goods or the value of them from the defendants, whereas, he ought to have found that the plaintiff was entitled to recover the value of the goods, as he has found that the goods had been sold by the defendant J. D. Walters.

2. Plaintiff excepts to conclusion of law No. 5, wherein he finds that the defendants are entitled to recover $971.32 from plaintiff, whereas, he ought to have found that the plaintiff was entitled to recover of the defendant John D. Walters, the value of the goods to-wit, $7,134.78, and interest thereon."

The Court overruled these exceptions and gave judgment as follows:

"It is adjudged that the plaintiff recover of the defendants the two stores and lots mentioned in the pleadings; that the defendants retain possession of the stock of goods and general merchandise, and that the defendants recover of the plaintiff the sum of nine hundred and seventy-one dollars and thirty-two cents, the amount found due by the referee, with interest on the said amount from December 1st, 1889, till paid, and further that the plaintff recover of the defendants his costs of this action, to be taxed by the Clerk."

The plaintiff assigned as error that the Court sustained the defendants' exception above mentioned, and overruled his exceptions above set forth, and appealed.

*Mr. Geo. Rountree*, for plaintiff.

*Messrs. G. V. Strong, W. R. Allen* and *C. B. Aycock*, for defendants.

MERRIMON, C. J.—after stating the case: A contract is entire, and not severable, when by its terms, nature and purpose it contemplates and intends that each and all of its parts, material provisions and the consideration, are common each to the other and interdependent. Such a contract possesses essential oneness in all material respects. The consideration of it is entire on both sides. Hence, where there is a contract to pay a gross sum of money for a certain definite consideration, it is entire, and not severable or apportionable in law or equity. Thus, where a particular thing is sold for a definite price, the contract is an entirety and the purchaser will be liable for the entire sum agreed to be paid. And so also, when two or more things are sold together for a gross sum, the contract is not severable. The seller is bound to deliver the whole of the things sold, and the buyer to pay the whole price, in the absence of fraud. Hence, it

has been held that where a cow and four hundred pounds of hay were sold for seventeen dollars the contract was entire. Mr. Justice STORY says that "the principle upon which this rule is founded, seems to be that as the contract is founded upon a consideration dependent upon the entire performance thereof, if for any cause it be not wholly performed the *casus fœderis* does not arise, and the law will not make provision for exigencies against which the parties have neglected to fortify themselves." Such contracts are enforcible only as a whole.

On the other hand, a severable contract is one in its nature and purpose susceptible of division and apportionment, having two or more parts, in respect to matters and things contemplated and embraced by it, not necessarily dependent upon each other, nor is it intended by the parties that they shall be. Hence, an action may be maintained for a breach of it in one respect and not necessarily in another, or for several breaches, while in other material respects it remains in tact. In such a contract the consideration is not single and entire as to all its several provisions as a whole; until it is performed it is capable of division and apportionment. Thus, though a number of things be brought together without fixing an entire price for the whole, but the price of each article is to be ascertained by a rate or measure as to the several articles, or when the things being of different kinds, though a total price is named, but a certain price is affixed to each thing, the contract in such cases may be treated as a separate contract for each article, although they all be included in one instrument of conveyance, or by one contract. Thus where a party purchased two parcels of real estate, the one for a specified price and the other for a fixed price, and took one conveyance of both, and he was afterwards ejected from one of them by reason of defect of title, it was held that he was entitled to recover therefor from the vendor. *Johnson* v. *Johnson*, 3 Bos. & Pul., 162; *Miner* v. *Bradley*, 22 Pick.,

459. So also it was held, where a certain farm and dead stock and growing wheat were all sold together, but a separate price was affixed to each of these things, it was held that the contract was entire as to each item and was severable into three contracts, and hence a failure to comply with the contract as to one item did not invalidate the sale and give the vendor a right to reject the whole contract. In such case the contract may be entire or several, according to the circumstances of each particular case, and the criterion is to be found in the question whether the whole quantity—all of the things as a whole—is of the essence of the contract. If it appear that the purpose was to take the whole or none, then the contract would be entire; otherwise, it would be severable. It is sometimes difficult to determine whether the contract is entire or severable in such cases, and there is great diversity of decisions on the subject, "but on the whole, the weight of opinion and the more reasonable rule would seem to be that where there is a purchase of different articles at different prices at the same time, the contract would be severable as to each article, unless the taking of the whole was rendered essential either by the nature of the subject-matter or by the act of the parties." This rule makes the interpretation of the contract depend on the intention of the parties as manifested by their acts and the circumstances of each particular case. *Brewer* v. *Tysor*, 3 Jones, 180; *Niblett* v. *Herring*, 4 Jones, 262; *Brewer* v. *Tysor*, 5 Jones, 173; *Dula* v. *Cowles*, 7 Jones, 290; *Jarrett* v. *Self*, 90 N. C., 478; *Chamblee* v. *Baker*, 95 N. C., 98; *Lawing* v. *Rintles*, 97 N. C., 350; *Pioneer Manufacturing Co.* v. *Assurance Co.*, *ante*, 176; Story on Cont., §§ 21, 25; 3 Par. Cont., 187; Whar. Contracts, §§ 338, 511, 748.

Applying the rules of law thus stated to the case before us, we are of the opinion that the contract to be interpreted treated as executory, is severable and the sale of the goods therein mentioned was not necessarily an inseparable part

of the land embraced by this contract.   Although it is single, it embraces the sale of two distinct things, each having a certain price affixed to it, and the price paid for the whole being susceptible of apportionment.   Neither by the terms of the contract settled by the findings of fact, nor by its nature and purpose, does it appear that the storehouse lot of land and stock of goods, distinct things, were both necessary parts of an entire contract.   These things were not necessary parts of each other; they were entirely capable of being sold separately.   Nor does it appear that they were sold as a single whole.   On the contrary, they were spoken of and treated as different subjects of sale, a specified price was affixed to the land, and a distinct definite price affixed to the goods.   Wherefore this distinction?   Why was the price fixed as to the separate and distinct subjects of sale? As we have seen, the two things were not necessary to each other, and nothing was said or done by the parties, nor does anything appear to show that the party would not have made the contract unless it embraced both the sale of the land and the stock of goods.   The sale of the stock of goods was not part or parcel of the sale of the land nor dependent upon it; although the sale of both were made at the same time and embraced by the same contract, severable in its nature and purpose, they were treated as distinct subjects of sale, the price of each being definitely fixed.   The mere fact that the plaintiff was about to change the character of his business, did not imply that the storehouses and the land on which they were situate must be sold with the goods, else the goods would not be sold.   Such things are valuable to let for rent.   There is an absence of anything that shows a purpose to sell the two things as an inseparable whole. When, therefore, the plaintiff avoided the contract, not reduced to writing as to the land, as he might do under the statute pertinent, he did not avoid the contract as to the stock of goods; the contract was severable, and as to the

110 — 17

goods was valid and remained of force and continued to have effect.

It seems that really the contract was executed as to the goods, and the sale might on that ground be upheld without reference to the ineffectual sale of the land, but no question in that aspect of the case was raised.

Affirmed.

## DEFENDANTS' APPEAL.

MERRIMON, C. J.: This action is somewhat peculiar. Its purpose is to avoid a contract not reduced to writing in respect to real and personal property. The plaintiff recovered the real property, but not the personal property. As to the latter, the Court by its judgment settled the rights of the parties favorably to the defendants. The Court gave judgment against them for costs, and this they assigned as error.

The statute (*The Code*, § 525) prescribes that costs shall be allowed of course in favor of the plaintiff upon a recovery in an action for the recovery of real property, or when a claim to real·property arises on the pleadings, or in an action to recover the possession of personal property. But the defendant shall be allowed costs in such actions, unless the plaintiff be entitled to costs therein. There is no provision that limits the allowance of costs in favor of the plaintiff in case of only a partial recovery in such action. The language of the statute as to them is comprehensive and without exceptive provision. In *Wall* v. *Covington*, 76 N. C., 150, it was held that no part of the costs in such actions can be taxed against the party recovering. And in *Horton* v. *Horne*, 99 N. C., 219, it was decided in an action to recover personal property, that if the plaintiff establishes his title to only a portion of the property delivered to him under claim and delivery proceedings, he will be entitled

to costs. Parties are entitled to recover costs only in the cases and as allowed by statute. We think the Court properly allowed the plaintiff his costs. *Railroad* v. *Phillips,* 78 N. C., 49.

If it be granted that this is not strictly an action for the recovery of real or personal property, then it would be embraced by the statute (*The Code,* § 527) in respect to costs, and costs would be allowed in the discretion of the Court; and nothing to the contrary appearing, it would be taken that the Court gave judgment in the exercise of its discretion in favor of the plaintiff. *Gulley* v. *Macy,* 89 N. C., 343.

Affirmed.