[S. F. No. 13000. In Bank.—July 8, 1930.]

GEORGE A. LASHER, Respondent, v. A. C. FAW et al., Defendants; CROSS INVESTMENT COMPANY (a Corporation), Appellant.

Cross & Brandt for Appellant.

M. S. Hamilton and James H. Boyer, for Respondent.

PRESTON, J.—The judgment is affirmed.

This action was brought by plaintiff for the purpose of rescinding a certain agreement of exchange entered into between himself and defendant Faw and to obtain in connection therewith such incidental relief as might be equitable, to wit, reconveyances to him of certain real property; cancellation of certain notes; a money judgment against defendant Murray and all other proper equitable relief. The court made findings and judgment was entered thereon in his favor, from which defendant Cross Investment Company, a corporation, has alone appealed. The facts are virtually undisputed and such as are necessary for the purposes of this opinion will now be set forth:

Appellant owned certain real property in Oakland, California, upon which a garage building was erected. By written agreement it leased this property to defendant Faw for a period of twenty years from January 25, 1922. Among other things, said agreement provided that neither the lease nor any part thereof could be assigned without the written consent of the lessor first had and obtained. It also required that defendant Faw give a guarantee for faithful performance on his part of the terms thereof. Pursuant to this requirement a guarantee agreement was duly executed by defendant Lyon. Later, and on January 23, 1923, by the

express consent of said lessor, a second guarantee agreement was duly executed whereby defendant Murray was substituted as guarantor in the place and stead of said other defendant. It appears that Faw was indebted to Murray in the sum of $10,300, evidenced by notes and partly secured by a chattel mortgage on the equipment of said garage. Therefore, on January 25, 1923, a further agreement was· entered into between Faw and Murray whereby Faw assigned said lease to Murray and agreed to pay him a certain sum monthly on said indebtedness and Faw was to keep said garage business so long as said payments to Murray were faithfully met; upon full and faithful performance of the terms of the agreement by Faw, Murray was to reassign the lease to him. Consent of the lessor to this assignment was obtained, but it was expressly provided that such consent should not be construed as a waiver of the provisions in said lease against further assignment thereof without its written consent. In the event the assignment of the lease to Murray should become absolute, he agreed to notify appellant lessor and he would thereupon be deemed the lessee bound by the terms of said lease.

The above is a brief recital of the transaction respecting said garage business up to the point of plaintiff's entrance upon the scene. Plaintiff was the owner of a ranch in Sonoma County of 640 acres, subject to an encumbrance of $15,000, also of another Sonoma County ranch of 40 acres, and of certain lots in Berkeley, California. On November 7, 1923, he entered into a written agreement of exchange with defendant Faw, whereby the latter agreed to exchange his said lease, the said garage business, and equipment, subject to an encumbrance of $8,450, for the properties above mentioned. In other words, in exchange for plaintiff's said 640-acre ranch, subject to said encumbrance, his 40-acre ranch clear, and said Berkeley lots clear, defendant Faw agreed to have said lease assigned to plaintiff and to convey to him the stock, tools, equipment and business being carried on on the premises, subject to his (Faw's) indebtedness to Murray, as security for which Murray was holding said chattel mortgage on the tools and equipment and the assignment of said lease.

Prior to execution of said agreement of exchange, however, Faw had consulted with appellant lessor and knew that it

would demand $5,000 for its consent to an assignment of said lease to plaintiff, but plaintiff had no knowledge of this fact. Plaintiff, therefore, proceeded to partly perform said agreement of exchange. As security until he could clear his 40-acre ranch he delivered to Faw his note for $4,000 on December 3, 1923; on February 18, 1924, he delivered to him a note for $1,000, secured by deed of trust on said Berkeley lots and on February 19th another note for $1,000, secured by a similar deed of trust. These notes, the court found, were then indorsed by Faw to defendants Lyon and Murray, who took them in due course and for value. The judgment rendered herein, therefore, did not order their cancellation.

During this period Faw had continued his negotiations with appellant, but plaintiff was still without his assignment of lease, and he knew that Faw was having difficulty in procuring it. Plaintiff and Faw, therefore, on February 5, 1924, entered into a second agreement by which Faw undertook once more to secure appellant's consent to assignment, as partial consideration for which plaintiff had theretofore delivered said two promissory notes, secured by deed of trust, and plaintiff agreed to deliver Faw a deed to his 40-acre ranch, upon which there was a mortgage of $6,000, and a deed to said four Berkeley lots. Faw agreed that if he failed to procure said consent he would redeliver the promissory notes to plaintiff or their equivalent in value.

At this juncture, appellant, having completed its inquiries, finally stated to Faw that for $5,000 it would consent to said assignment of lease to plaintiff. Faw, of course, was unable to pay that sum and advised appellant fully of the state of the transaction between himself and plaintiff. Therefore, on March 6, 1924, appellant addressed a letter to Faw setting forth definitely and precisely the terms upon which it would consent to said assignment, to wit: First, that within five days $2,500 cash be paid to it or instead that said four Berkeley lots, clear, owned by plaintiff be conveyed to it; second, that prior to March 20, 1924, a balance of $296.66 due R. H. Cross on a certain note be paid; third, that an additional payment of $2,500 cash be made on or prior to March 20th, or in lieu thereof $1,000 cash and a 30-day promissory note for $1500, secured by deed of trust on plaintiff's ranch; fourth, that the written consent of said Murray to said assignment be delivered to it; fifth, that a

guarantee of faithful performance by plaintiff of all the terms and provisions of the lease be delivered to it, and, sixth, that prior to March 20th a written agreement signed by plaintiff, in form satisfactory to appellant, assuming and agreeing to perform said lease and all the terms and conditions of the agreement between Murray and appellant, be delivered to it. It will be noted that the above letter was addressed to Faw, not to plaintiff, for appellant steadfastly refused to recognize plaintiff in the negotiations.

Faw, however, showed the letter to plaintiff and he thereupon handed to Faw for immediate delivery to appellant, a direct bargain and sale deed to it of said Berkeley lots, free and clear. Thereafter, appellant, from time to time, granted several extensions for the performance of the other conditions set forth in said letter, but they were never performed. Neither did appellant ever give its consent to the assignment of said lease to plaintiff, nor did it offer to return said property to plaintiff. On the contrary, in April, 1924, it entered into and consummated an agreement for the sale of said property to a third person for the sum of $2,000. In August, plaintiff having parted with his property and being still without his assignment of lease, vacated and abandoned the garage premises and surrendered possession to Murray. Faw defaulted on his obligation to Murray and, some time later, Murray brought an action and foreclosed on said assignment of lease which he held as additional security. The decree in said action was entered on January 12, 1925, and the sale thereunder was had on February 9, 1925, at which Murray became the purchaser of the lease and entered into and took possession of the premises. The court specifically found that said assignment had been made by Faw to Murray as security only, and not otherwise, and prior to purchase at the foreclosure sale. Murray was not the owner of the lease; further, that plaintiff had full knowledge that Murray held the lease as security only and had full knowledge of all proceedings by which it finally, on foreclosure, became vested in Murray.

In February, 1925, plaintiff brought this action, seeking to recover everything with which he had parted in reliance upon the promises and agreement of Faw, including the property so conveyed by him to appellant. As above stated, the court found for plaintiff and as a conclusion of law

held that the due assignment and transfer from Faw to plaintiff of said lease was a material part of the consideration for the contract of exchange between them; that the failure of Faw to procure appellant's consent thereto constituted a material substantial failure of consideration and plaintiff was therefore entitled to rescind said contract of exchange on that ground and to have restored to him all of said real and personal property, subject to the liens existing thereon to secure the payments to defendants Murray and Lyon of the promissory notes held and acquired by them in due course for value without notice of any equities therein claimed by plaintiff. The court then decreed that plaintiff's said 40-acre ranch be restored to him and that he have and recover from appellant said Berkeley lots so deeded to it, or, in lieu thereof, a money judgment for $4,000, the reasonable value thereof. Defendant Cross Investment Company alone appealed from said judgment.

Appellant complains of an alleged contradiction in the findings in that the court found to be true the allegations of the complaint which alleged as the sole ground for recovery of said property, the fact that plaintiff conveyed it to appellant, and appellant took it with full knowledge on its part that it was one of the pieces of real property the subject of said agreement of exchange and as a part of the consideration thereof to be paid on the part of plaintiff and that it was procured by appellant from plaintiff with such knowledge; and plaintiff received no consideration from appellant for the conveyance of said property to it as aforesaid; and the court further found as follows: That plaintiff, the owner of said lots, conveyed them to appellant upon an understanding and agreement that in consideration therefor, together with the payment of a further sum of $2,500, an assignment of said lease should be forthwith transferred to plaintiff; that said lease was never assigned or transferred to plaintiff and that the consideration for which said lots were conveyed to appellant wholly failed and appellant therefore took and held possession of said lots without consideration, the reasonable market value thereof being $4,000. The alleged contradiction, if in fact there is one, is in our opinion unworthy of mention and certainly may not be considered as a ground for the reversal of this judgment. ■ The rule is so well settled that it requires no citation of authority

to support it that a judgment may not be set aside unless the conflict in the findings is clear and the findings are incapable of being harmoniously construed.

There is likewise no merit in appellant's contention that its demurrer to the complaint should have been sustained. We have examined the pleading and its sufficiency as against demurrer is plain. The point does not warrant detailed discussion.

Appellant further claims that it is apparent that the theory of both plaintiff in his complaint and of the court in rendering its judgment was that a voluntary and deliberate conveyance of real property, made without fraud, mistake or undue influence can be rescinded for failure of consideration, which conclusion is contrary to law, as the remedy in such cases is at most an action for damages. In other words, appellant claims that the second agreement of February 5, 1924, between plaintiff and Faw, wherein plaintiff agreed to immediately deliver a deed to said property to appellant, the assignment of lease and consent of appellant thereto to be later secured by Faw, entirely superseded the first contract; that as there is absolutely nothing in the deed or in said agreement which could in any way constitute a condition subsequent and as plaintiff freely and voluntarily made the conveyance to appellant, he had no right to complain, or to seek rescission, being at most entitled to bring an action for damages (*Hartman* v. *Reed,* 50 Cal. 485; *Lawrence* v. *Gayetty,* 78 Cal. 126 [12 Am. St. Rep. 29, 20 Pac. 382]; *Tillaux* v. *Tillaux,* 115 Cal. 663 [47 Pac. 691]; *Schott* v. *Schott,* 168 Cal. 342 [143 Pac. 595], and other cases).

The rule contended for by appellant and set forth in the authorities just cited is sound, but it is not applicable to a case of this character. The contract of exchange between plaintiff and Faw we must hold to be entire and not severable (*Wooten* v. *Walters,* 110 N. C. 251 [14 S. E. 734], as approved in *Sterling* v. *Gregory,* 149 Cal. 117, 120 [85 Pac. 305]); it was an executory contract wherein the several obligations of the parties constituted to each, reciprocally, the consideration thereof and the failure to perform constituted a failure of consideration within the meaning of section 1689 of the Civil Code, entitling plaintiff to rescind the entire transaction, of which the transaction with appellant was a vital part. See *Richter* v.

*Union Land etc. Co.*, 129 Cal. 367, 372, 373 [62 Pac. 39, 40], wherein the following language is used and the cases of *Hartman* v. *Reed, supra,* and *Lawrence* v. *Gayetty, supra,* are properly distinguished:

"The position of the plaintiff that the failure of one of the parties to a contract to perform does not in any case, constitute a failure of consideration—and that the only remedy of the injured party is to recover damages—cannot be sustained. In all executory contracts the several obligations of the parties constitute to each, reciprocally, the consideration of the contract; and a failure to perform constitutes a failure of consideration—either partial or total, as the case may be—within the meaning of section 1689 of the Civil Code. In the case of an executed contract—as e. g., a deed of land of which the consideration is a promise to pay the purchase money—this is not always true; because in such cases, or generally in such cases, 'the vendor has waived actual performance upon the part of the vendee, relying upon his mere promise to perform.' (*Lawrence* v. *Gayetty,* 78 Cal. 126, 134 [12 Am. St. Rep. 29, 20 Pac. 382]; *Hartman* v. *Reed,* 50 Cal. 485; *Schultz* v. *McLean,* 93 Cal. 358 [28 Pac. 1053].) Which is but to say that, the actual inducement to the vendor to enter into the contract, or, in other words, the sole and sufficient consideration contemplated by him, is the mere obligation of the vendee to pay, without regard to the contingency of its performance. For in such cases, almost universally, the payment of the purchase money is secured by a lien on the land sold, and the reliance of the vendor is upon his ability to enforce the payment of the vendee, *in invitum.* But the rule, even if it could be regarded as universal, applies only to the rescission of executed contracts, and not to executory contracts, as in the case here." See to the same effect, *Smith* v. *Blandin,* 133 Cal. 441, 444 [65 Pac. 894]; *Bray* v. *Lowery,* 163 Cal. 256 [124 Pac. 1004]; *Grotheer* v. *Panama-Pac. Land Co.,* 41 Cal. App. 19 [181 Pac. 667]; *Campbell* v. *Kennedy,* 177 Cal. 430 [170 Pac. 1107].

In other words, it is clear from the pleadings and findings that the trial was had upon the theory that plaintiff was seeking to rescind said executory contract of exchange upon the ground of failure of defendant Faw, the other party thereto, to perform; that as an incident of the exchange,

looking to performance by plaintiff, appellant, with full knowledge of the situation accepted the deed to said property, a subject of said exchange, and likewise with full knowledge of all said facts, conveyed it to a third party. That appellant was fully aware of all the facts and circumstances connected with the entire transaction is established beyond doubt by the unquestionable evidence, including testimony of appellant's president and general manager, which supports the findings of the court in this behalf. Appellant having thereafter failed to give its consent to the assignment of said lease to plaintiff, held said property subject to an implied trust by operation of law in favor of the grantor (Civ. Code, sec. 852; Code Civ. Proc., sec. 1971) and was in duty bound to return it to him, or the reasonable value thereof.

In other words, having taken said property with full notice of the equities of plaintiff, appellant stood in no better position with respect to said rescission than defendant Faw would have stood, had the deed been made by plaintiff direct to him. The justice of this position is obvious. Plaintiff received nothing whatsoever from appellant for said deed; appellant parted with nothing in accepting it. Appellant does contend that, as it was not required to consent to an assignment of the lease, by its letter to Faw stating the conditions upon which it would assign and by accepting said deed, it changed its position to its detriment and prejudice, but this is merely begging the question. A bare statement of the facts shows that appellant studiously refrained from prejudicing itself in any way; that in fact it absolutely refrained from recognizing any direct dealing with plaintiff, but insisted on negotiating with Faw to secure said sum, should it give its consent to the transfer.

■ Appellant also attacks the judgment upon the ground that it does not purport to rescind the agreement between plaintiff and Faw or to quiet title against Faw to the property, but only announces a money judgment against it. Appellant, however, is the sole defendant to prosecute an appeal and its concern is, therefore, limited to that portion of the decree which affects its rights and directs a judgment against it. In an action of this character, it was within the power of the court to do exact justice between all the parties, to settle all issues, and, if necessary and appropriate, to

make the decree in the form of a personal monetary judgment (4 Cal. Jur. 797). ■ It was also proper to decree that plaintiff was entitled to receive from appellant $4,000, the reasonable value of the said lots as found by the court, rather than $2,000, the amount which appellant claims to have received from the sale thereof. The measure of plaintiff's loss was the reasonable market value of the property and the finding that such value was the sum of $4,000 has ample support in the evidence. (*Blahnik* v. *Small Farms Improvement Co.*, 181 Cal. 379 [184 Pac. 661, 663].)

The case just cited, *Blahnik* v. *Small Farms Improvement Co.*, is directly in point and is authority for the ruling which we have announced on many of the matters considered herein. We shall therefore close this discussion with a brief *résumé* of the holding there made. The object of that action was to recover $2,556.94, alleged to have been paid by the plaintiffs to defendant as a part of the purchase price of certain lands which defendant had contracted to sell them, which contract, it is alleged, was rescinded by plaintiffs because of defendant's failure to perform the covenants therein contained. The court held that defendant's failure to construct certain roads, as provided in the contract of sale, constituted a failure of a material part of the consideration, entitling plaintiffs to rescind. It then appeared that by the recitals in the contract the defendant acknowledged receipt of $2,300 upon the purchase price, but upon the trial it was shown that this sum was not paid in money, but that the real transaction was an exchange of certain real property conveyed by plaintiffs to defendant and taken by defendant at the sum of $2,300, which amount was credited upon said contract price. Under the evidence, at the highest value given said property by any witness, it would have been worth at the time the contract was executed at least $300 less than the amount for which it was credited on said contract of sale to plaintiffs. The court below apparently disregarded this evidence and allowed plaintiffs the full sum of $2,300 as a payment made upon the contract, which they were entitled to recover. The appellate court in this behalf said: "It also appeared at the trial that after the contract of sale was made, but before the offer to rescind, the defendant had conveyed the property received in exchange to other parties and was not able to restore that part of the consideration.

The court, apparently, proceeded upon the theory that the plaintiffs were entitled to treat the amount for which said property was taken in exchange as a payment in money upon the price of the property sold to the plaintiffs by defendant and to recover said amount upon a rescission. In this the court erred. If the defendant had retained the title to the property, the most that the plaintiffs could have demanded upon the rescission would have been a reconveyance thereof to them. The defendant having parted with the title thereto, and being unable to restore the plaintiffs to the position in which they were at the time the contract was made the rule in equity is that they must compensate the plaintiffs for the loss thereby sustained. This would not be the price at which the property had been accepted upon the contract of sale, *but would be its value at that time,* and it was, therefore, necessary for the court to determine such value. 'Where the grantee has conveyed the property, or part of it, to another, or for other reason cannot restore it, the plaintiff is entitled to a money judgment for the value of the land, the restoration of which is thus impossible; such relief being given on the principle that the court having obtained jurisdiction will retain the case for the purpose of giving complete relief.' (6 Cyc. 340.) Equity does not measure the damage by the price at which the property may have been taken in the exchange between the parties, but allows only the value of the property at the time the exchange was made (9 Cor. Jur. 1263, sec. 211; *Forrest* v. *Wardman,* 40 App. D. C. 531; Sedwick on Damages, 9th ed., sec. 655b).''

We are satisfied with the equitable disposition made of this cause by the court below; hence our affirmance of the judgment first herein announced.

Shenk, J., Richards, J., Seawell, J., Curtis, J., Langdon, J., and Waste, C. J., concurred.

Rehearing denied.